IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-01441-WJM-MJW

ARNELL SHELTON,

Plaintiff,

v.

D. BERKEBILE, *FCC Warden*, and
JENNIFER COULTER,

Defendants.

---

**REPORT AND RECOMMENDATION**
on

**DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
(Docket No. 35)
and**

**ORDER
on**

**PLAINTIFF'S MOTION OF REQUEST TO HAVE COURT APPOINT PRO BONO
COUNSEL
(Docket No. 42)**

**PLAINTIFF'S MOTION FOR DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 26
(Docket No. 47)
and**

**MOTION FOR DEFENDANTS' FAILURE TO FULLY COMPLY WITH PLAINTIFF'S
MOTION FOR DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 26
(Docket No. 49)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Arnell Shelton is incarcerated at USP Florence ADMAX ("Florence ADX"). He filed this lawsuit against the prison warden and a staff psychologist, alleging (1) that the care he receives for his mental health is constitutionally inadequate, and (2) that the U.S. Bureau of Prisons ("BOP") violated its own procedures in violation of his due process rights by placing him in Florence ADX without first conducting an appropriate mental-health evaluation. In response, Defendants have moved for partial summary judgment and to dismiss for failure to state a claim.

The Court has reviewed the parties' filings (Docket Nos. 35 & 43), taken judicial notice of the court's entire file in this case, and reviewed the relevant Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following findings of fact, conclusions of law, and recommendation. The Court also denies three outstanding motions by Plaintiff as moot.

## Procedural Background & Amended Complaint

Plaintiff's initial Complaint was brief and will be replicated here in full (with certain typographical errors corrected):

> Claim One: 8th Amendment Violation Deliberate Indifference to My Serious Medical Needs. Violation of the Suicide Convention Act.
>
> Supporting Ground: Over the several years inside solitary confinement at ADX I have pleaded for help through psychologist Dr. Jennifer Coulter and I have been requesting to receive psychotherapy, and medical treatment. After being told by the psychologist Jennifer Coulter that even if I attempt suicide I will not be afforded any treatment, over several years I have been inside ADX I have been swallowing pills, and I was sent to the outside (4-4-14) hospital where it was declared an attempted suicide, once I was brought back to ADX I inform Warden D. Berkebile that I'm going to commit suicide because I was struggling with the suicide thoughts in my head. Furthermore I inform the psychology staff that they was violating

> the Suicide Prevention Act and B.O.P. policy. Therefore, I am going to commit suicide by use of a razor, and self-starvation via hunger strike.
>
> Requested Relief: I request this court to notify the office of the inspector general and the United States Attorney General Eric Holder that I have notify the staff psychologist Jennifer Coulter that I will be committing suicide. I also request that this court order the Warden D. Berkebile and staff psychologist Jennifer Coulter to comply with the Suicide Prevention Act once I've committed suicide.

(Docket No. 1.) Then-Lead Magistrate Judge Boyd N. Boland determined that the complaint was not appropriate for summary dismissal under 28 U.S.C. § 1915A and D.C.Colo.LCivR 8.1(b), and ordered the case drawn to a presiding judge. (Docket No. 3.)

Upon receiving the case, District Judge William J. Martinez ordered Defendants to report on Plaintiff's status and treatment:

> The Court has a continuing concern for the well-being of prisoners. Given the need for an immediate response to Mr. Shelton's claim that he intends to commit suicide, the Court will direct service on Defendants Berkebile and Coulter for the purpose of submitting to the Court a report on their knowledge of Mr. Shelton's mental health status—including his suicidal ideation—and what actions are being taken to address and treat his condition. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (approving district-court procedure of requiring prison officials named in civilrights lawsuits to investigate and report to court on relevant facts at outset of case).
>
> Accordingly, it is ORDERED that the Clerk of the Court shall serve Defendants Berkebile and Coulter with a copy of the letter/complaint as soon as practicable. It is further ORDERED that Defendants shall file the report requested by the Court no later than June 5, 2014. It is further ORDERED that Mr. Shelton may file a response to the report by June 12, 2014.

(Docket No. 6.) In response, the U.S. Bureau of Prisons ("BOP") filed a Declaration by Florence ADX's Chief Psychologist, who is also the Program Coordinator for the facility's suicide prevention program, as well as copies of the applicable BOP Program

4

Statements. (Docket No. 11.) The Declaration attested that Plaintiff was diagnosed with certain disorders and had received extensive treatment, including having been on suicide watch at least once. (Declaration 11-1.) Judge Martinez then entered the following order on the court's docket:

> The Court has reviewed the materials submitted by the Defendants in response to the Court's Order issued pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and is satisfied that Defendants are aware of Plaintiff's mental health condition, including his suicidal ideation, and have a plan in place to monitor such condition. While the Court makes no findings that could potentially impact the overall merits of this case, it sees no need to take additional emergency steps at this time. The case shall proceed in accordance with the Federal Rules of Civil Procedure.

(Docket No. 12.)

At the prescreening stage, Magistrate Judge Boland had ordered Plaintiff to file an amended pleading. (Docket No. 3.) Plaintiff did so on August 4, 2014, using the court's prepared form for prisoner complaints. (Docket No. 18.) Under the "Nature of the Case" section, Plaintiff wrote:

> I'm being denied appropriate mental health treatment by both the doctors and the psychology dept. as well as the executive staff that I approach attempting to seek treatment. I've been forced to deal with extreme retaliatory treatment subjected to subjective punishment by the psychology staff. I've attempted suicide on numerous occasions only to be ridiculed and dismissed by the same staff I've requested help from.

(*Id.*, p.3.) Under the "Cause of Action" section, Plaintiff provided two claims:

> [Claim One:] Appropriate Mental Health Placement
>
> ADX is an institution which create mental illnesses instead of one that helps. Since my arrival here I've attempted suicide several times. Most reasonly on 4-4-14 whereas through I had to be rushed to an outside hospital. And on 5-19-14 I swallowed a razor blade with the intentions of causing internal bleeding. Since then I've received no treatment from psychology addressing my depressed state of mind or to address the

> anxiety attacks I've been having.  Continue placement here at ADX is denying me my rights to receive appropriate mental health treatment from an appropriate medical facility.
>
> [Claim Two:] Due Process Rights
>
>> B.O.P. Regulations Program Statement 5310.16 ADX Referral Review Procedures states: A mental health evaluation is a required component of all referral packets for the ADX Florence Control Unit and ADX Florence general population (per the Program Statements Control Unit Program and Inmate Security Designation And Custody Classification, respectively).  I was transferred from Marion USP on 8-11-06 for Code 369 Institution Remission which did not allow me any such participation in an evaluation.  Therefore, violation my Due Process rights and B.O.P. Rules and Regulations Program Statement 5310.16.

(*Id.*, pp. 4–5.)  Under the "Request for Relief" section, Plaintiff wrote:

> Requesting to be placed in an appropriate medical institution for a true evaluation to address my mental state.

(*Id.*, p. 8.)

The Amended Complaint thus seeks injunctive relief, based on the Eight Amendment's deliberate indifference doctrine and/or the Fifth Amendment's due process doctrine.

As to the deliberate indifference claim, Defendants argue that the Court should enter summary judgment against Plaintiff because Plaintiff failed to exhaust his administrative remedies; in the alternative, Defendants argue that the first claim should be dismissed for failure to allege facts pertaining to the subjective prong of such a claim. As to the due process claim, Defendants argue that it should be dismissed both because it is untimely and because it fails to implicate a cognizable liberty interest.

6

## Discussion

Defendants move for summary judgment on Claim One; in the alternative, to dismiss Claim One for failure to state a claim; and to dismiss Claim Two for failure to state a claim.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986). A fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the facts are such that they might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). A court must resolve factual ambiguities in favor of the nonmoving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.,* 817 F.2d 83, 85 (10th Cir. 1987); *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001).

"A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." *Robertson v. Board of County Comm'rs of the County of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Southway v. Central Bank of Nigeria*, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001), *aff'd*, 328 F.3d 1267 (10th Cir. 2003). "These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" *Id.* Summary judgment is appropriate only when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response. *Id.*

By contrast, under Rule 12(b)(6), the Court must accept the facts alleged in the Complaint as true; further, if there are inferences that must be drawn, the Court must draw them in Plaintiff's favor. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). Only factual allegations are to be accepted as true. Allegations of legal conclusions are not included in the Court's analysis. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief. It is not necessary for Plaintiff to allege a prima facie case including every last element of his legal claims—but he must put forward enough facts for the Court to infer that his claims are at least plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

I.    **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. 42

U.S.C. § 1997e(a). This exhaustion requirement "is mandatory, and the district court [i]s not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). The requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). The "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP-8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP-9 form. The BP-8 and BP-9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP-9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP-10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP-11 form. *Id.*

Defendants argue that Plaintiff has failed to exhaust this administrative process, as to his deliberate-indifference claim. For support, Defendants provide a declaration

9

from Florence ADX's Administrative Remedies Coordinator, along with records from the BOP's "SENTRY" database.  (Docket No. 35-1.)  The SENTRY records show:

- Plaintiff filed a Form BP-9, *Request for Administrative Remedy*, on July 20, 2012; the request was rejected, and the records show the codes "INF RSF" as the reason.  (*Id.*, p.21.)  According to the coordinator's declaration, these codes indicate (1) that Plaintiff's request was denied because he failed to show that he first filed a Form BP-8, *Informal Resolution Form*, and (2) that he was told he could resubmit his request, with appropriate evidence, within five days.  (*Id.*, p.4.)
- Plaintiff filed a Form BP-10, *Regional Administrative Remedy Appeal*, on August 22, 2012; this appeal was rejected, and the records show "INS OTH RSR" as the reason.  (*Id.*, p. 22.)  The coordinator's declaration does not define these codes, but the record contains, also, the remarks "RESUBMIT TO INSTITUTION WITH PROOF ON INFORMAL RESOLUTION."  (*Id.*)
- Plaintiff filed a Form BP-11, *Central Office Administrative Remedy Appeal*, on September 10, 2012; this appeal was also rejected, and the records show "OTH" as the reason.  (*Id.*, p. 22.)  The coordinator's declaration again does not define these codes, but the record contains, also, the remarks "FOLLOW INSTRUCTIONS PROVIDED IN REJECTION [at prior step]."  (*Id.*)

Based on these facts, Defendants argue that Plaintiff never filed the Form BP-8, never cured that deficiency when directed to do so, and as a result never availed himself of BOP's administrative remedies.

10

Defendants candidly admit that the SENTRY system does not track informal requests for remedies. (*Id.*, p. 2.) As a result, the records do not directly establish that Plaintiff failed to file a Form BP-8. They establish only that the BOP gave that purported failure as its reason for denying relief at later, more formal levels of review. That said, the records still support the inference that Plaintiff failed to file a Form BP-8.

Plaintiff's only response is to argue that the formal levels of review (*i.e.*, Forms BP-9, BP-10, and BP-11) are not made available until *after* the initial informal request is declined. (Docket No. 43, at 1.) Plaintiff does not explain why this point is relevant. The likeliest connection, though, is that Plaintiff means to argue that the very presence of Forms BP-9, BP-10, and BP-11 on this grievance necessarily shows that he filed the informal request—because he could never have filed a BP-9 had he not first filed a BP-8. This is insufficient, for two reasons. First, there is no other factual support for this attenuated inference. At no point does Plaintiff even state that he filed a Form BP-8, nor does he allege that the BOP's stated reason for denying his grievance was mistaken or made in bad faith. As a pro se petitioner, the Court does not hold Plaintiff to the standards to which an attorney would be held—but Plaintiff does not plainly dispute Defendants' statements of fact, and the Court cannot create a dispute where none exists. Second, even if Plaintiff could support a finding that he filed a Form BP-8 (and thus that BOP had denied his claim in error or in bad faith), the records still show that he was given the opportunity to re-file his grievance with further proof—and that he did not do so.

11

Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court nonetheless finds that (1) Plaintiff did not file a Form BP-8, and also (2) Plaintiff did not re-file his Form BP-9 (or later forms) with updated information as to any request for informal resolution.

Either one of these facts would suffice to establish that Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment claim. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032–33 (10th Cir. 2002) (failing to cure deficiencies amounts to failing to complete, *i.e.* exhaust, grievance process); *see also Craft v. Null*, 543 F. App'x 778, 779–80 (10th Cir. 2013) (skipping informal first step, when not authorized to do so, failed to exhaust remedies); *Hemphill v. Jones*, 343 F. App'x 329, 331 (10th Cir. 2009) (failing to use procedure for following up on late responses does not exhaust remedies); *Hoover v. West*, 93 F. App'x 177, 181 – 82 (10th Cir. 2004) (no exhaustion where plaintiff elevated grievance through appeal process without first curing deficiency). This is not a case where the administrative remedies were made unavailable to Plaintiff. *See, e.g.*, *Zarska v. Higgins*, 171 F. App'x 255, 257–58 (10th Cir. 2006). It is a case where Plaintiff failed to take advantage of the administrative remedies—and it is therefore a case that this Court cannot hear.[1] The Court recommends that Defendants' motion for partial summary judgment on Plaintiff's Eighth Amendment claim be granted.

---

[1] The Court notes that, although there is evidence that Plaintiff is under some form of mental disability (*see* Docket No. 11), Plaintiff does not argue that his mental illness prevented him from understanding the deficiencies in his remedy requests or otherwise prevented him from following the administrative-remedy process. *See generally Johnson v. District of Columbia*, 869 F. Supp. 2d 34, 39–40 (D. D.C. 2012) (collecting cases); *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011) (mental illness raised question of fact as to whether administrative remedies were unavailable

## II.  Deliberate Indifference

In the alternative, Defendants argue that the allegations in the Complaint fail to plausibly state a claim for deliberate indifference. The standard for inadequate medical care under the Eighth Amendment is "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health and safety," *id.* at 837.

Defendants' argument rests solely on the subjective component. (Docket No. 43, pp. 10–11.) The subjective component of an Eighth Amendment claim is met if the plaintiff demonstrates a defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citations omitted). The level required to make out a claim for deliberate indifferent is "more blameworthy than negligence," requiring "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. As explained by the Tenth Circuit:

---

due to incompetence); *Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1020–21 (D. Colo. 2007) (mental illness raised question of fact as to legal disability warranting tolling of deadlines). Accordingly, the Court will not consider the argument. Moreover, the fact that he completed the *formal* grievance process, and has successfully grieved other issues (*see* Docket No. 35-1), would undermine any such argument. *See e.g.*, *Pinson v. Berkebile*, No. 11-cv-00608-WYD, 2014 WL 2883469, at *5 (D. Colo. June 24, 2014) *aff'd sub nom. Pinson v. Oliver*, No. 14-1260, 2015 WL 573999 (10th Cir. Feb. 12, 2015) (exhausting remedies on other claims undercut argument that plaintiff was mentally incapable of following grievance process).

13

> Thus, deliberate indifference does not require a finding of express intent to harm. An inmate need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge* of a *substantial risk* of serious harm. An official would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. Significantly, this level of intent can be demonstrated through circumstantial evidence . . . . This is so because if a risk is obvious so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it.

*Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (internal citations, quotation marks, and alterations omitted). Defendants argue that Plaintiff has failed to plead facts plausibly establishing this standard.

The Court disagrees. The Amended Complaint alleges that Plaintiff has requested and been denied treatment from doctors, psychology staff, and executive staff, and that his attempts to seek treatment have been met with ridicule. It further alleges that Plaintiff has attempted suicide several times, and that he has been taken to an outside hospital by ambulance at least once, due to an attempted suicide. These facts are more than sufficient to put the ordinary prison official on notice that Plaintiff is at risk of substantial harm due to his mental illness and suicidal ideations. While his Amended Complaint does not "name names," directly connecting Defendants to discrete and identifiable acts or omissions, the Court does not believe this infirmity warrants dismissal. Should District Judge Martinez disagree with the Court's recommendation as to partial summary judgment, the Court recommends that the motion to dismiss Claim One for failure to state a claim be denied.

14

### III. Statute of Limitations

Plaintiff's second claim is based on his transfer to Florence ADX, allegedly in violation of BOP policy. The Amended Complaint alleges that this transfer happened in 2006. Defendants accordingly move to dismiss based on the statute of limitations (Docket No. 35, p. 7–8); Plaintiff responds that the statute should be equitably tolled due to his mental infirmity (Docket No. 43, p.4).

Although an affirmative defense, the statute of limitations can be raised on a motion to dismiss if the complaint itself plainly establishes the defense. *ASARCO, LLC v. Union Pac. R.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n. 3 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period").

A *Bivens* action is subject to the limitation period for an action under 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras,* 484 F.3d 1236, 1238 (10th Cir. 2007) (citations omitted). For this case, the applicable state law provides a two-year statute of limtiations. *See* C.R.S. §§ 13–80–102(1)(a), (g); *Blake v. Dickason,* 997 F.2d 749, 750 (10th Cir. 1993). That said, Colorado tolls the limitations period for a "person under disability," which includes a person who is mentally incompetent. *Neiberger v. Hawkins,* 208 F.R.D. 301, 311 (D.Colo. 2002). *See also* C.R.S. § 13–81–101(3) (defining "person under disability" to include a person who is mentally incompetent or

under other legal disability); § 13–81–103(c) (allowing person under disability to take action within the period fixed by the applicable statute of limitations or within two years after the removal of the disability, whichever period expires later). Petitioners' Amended Complaint does not conclusively establish that he was mentally incompetent—but it raises more than enough doubt to survive a motion to dismiss. The Court recommends that Defendants' motion to dismiss Claim Two based on the statute of limitations be denied.

**IV.     Due Process**

Defendants finally argue that Plaintiff's due process claim—that he was transferred to Florence ADX in violation of BOP protocol requiring a mental-health screening before such a transfer—fails to state a claim upon which relief can be granted. The Court agrees.

"[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *Myers v. Klevenhager*, 97 F.3d 91, 94 (5th Cir. 1996). The Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates; rather, they are primarily designed to guide correctional officials in the administration of prisons. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Accordingly, a violation of BOP regulations or procedures can violate due process only when that violation impacts some constitutionally protected liberty or property interest. *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009).

It is well established that a transfer to Florence ADX does not violate any liberty interest or property interest protected by the Due Process Clause. *See, e.g.*, *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1247–51 (D. Colo. 2011); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1170–74 (D. Colo. 2010); *Georgacarakos v. Wiley*, Case No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *11–13 (D. Colo. Mar. 30, 2010). Accordingly, even if BOP did violate some administrative rule or regulation in transferring Plaintiff to Florence ADX, it does not rise to the level of a constitutional violation. The Court recommends that the motion to dismiss Claim Two for failure to state a claim be granted.

## **Recommendation & Orders**

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motion to Dismiss and for Partial Summary Judgment (Docket No. 35) be GRANTED IN PART and DENIED IN PART, as follows:

- Granted, insofar as it seeks partial summary judgment on Claim One based on failure to exhaust administrative remedies, under Rule 56(a);

- Granted, insofar as it seeks dismissal of Claim Two for failure to state a claim upon which relief can be granted, under Rule 12(b)(6); and

- Denied in all other respects.

Because the foregoing recommendation would, if adopted by the District Judge, resolve this case in its entirety, the Court hereby ORDERS that the following outstanding motions are DENIED AS MOOT:

- Plaintiff's Motion of Request to Have Court Appoint Pro Bono Counsel (Docket No. 42);

- Plaintiff's Motion For Discovery Pursuant To Federal Rule Of Civil Procedure 26 (Docket No. 47); and

- Motion For Defendants' Failure To Fully Comply With Plaintiff's Motion For Discovery Pursuant To Federal Rule Of Civil Procedure 26 (Docket No. 49).

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated: February 19, 2015  */s/ Michael J. Watanabe*
      Denver, Colorado  Michael J. Watanabe
                                    United States Magistrate Judge